IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARILYN JENNINGS,                        )
                                         )
                    Plaintiff,           )        No.  10 C 3130
            v.                           )
                                         )        Judge Robert W. Gettleman
WAUKEGAN PUBLIC SCHOOL DISTRICT 60,      )
                                         )
                    Defendant.           )

## <u>MEMORANDUM OPINION AND ORDER</u>

Marilyn Jennings has brought a three-count first amended complaint against her former

employer, Waukegan Public Schools, alleging discrimination based on race and retaliation

pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, and 42

U.S.C. § 1981.  Count one alleges that defendant discriminated through racially disparate

treatment and the creation of a racially hostile environment.  Counts two and three allege

defendant retaliated against plaintiff by subjecting her to disparate treatment, a hostile

environment and, ultimately, termination because plaintiff complained about defendant's

discriminatory treatment.  Defendant has moved for summary judgment under Fed. R. Civ. P. 56,

arguing that plaintiff failed to establish a prima facie case of discrimination or retaliation and

failed to rebut defendant's asserted non-discriminatory reasons for plaintiff's treatment and

termination.  Defendant has also moved to strike portions of plaintiff's LR. 56.1(b)(3) Statement

of Facts and Plaintiff's Response to Defendant's 56.1(a)(3) Statement of Facts.  For the reasons

stated below, defendant's motion for summary judgment is granted, and defendant's motion to

strike is denied as moot.

## FACTS[1]

Plaintiff is an African-American woman who was employed by defendant Waukegan Public Schools as an elementary school teacher for four years. Plaintiff was assigned to teach third grade at North Elementary School for the 2009-2010 school year, after teaching at two other elementary schools in the Waukegan public school system.

On October 7, 2009, plaintiff attended a staff meeting with around 60 members of the North Elementary School staff. At the meeting, plaintiff asked a question regarding intervention services her students were receiving. This question led to an exchange with a special education resource teacher who became so upset while talking with plaintiff that she fled the room.

The next day, the school's principal, Angel Figueroa, convened a meeting with plaintiff, the building's teachers' union representative, and assistant principal Jonathan Widger to discuss what had occurred at the staff meeting. During the meeting, Figueroa handed plaintiff a letter reporting that several teachers had complained to Figueroa about plaintiff's disrespectful behavior at the meeting. Figueroa's letter directed plaintiff to avoid confrontational, accusatory interactions with co-workers and to work to improve her relationship with them. After delivering the letter, Figueroa admonished plaintiff for her behavior at the meeting and told her that the letter would go in her personnel file.

Plaintiff and Figueroa met again on January 11, 2010, for a pre-evaluation conference. These conferences are usually brief, routine meetings to apprise the evaluator of what the teacher will be presenting to the students during the observation portion of the teacher's evaluation. At

---

[1]These facts are taken from the parties' L.R. 56.1 Statements and accompanying exhibits.

this pre-evaluation conference, Figueroa began talking with plaintiff about complaints he had received from the teachers, staff, and parents regarding what they perceived as plaintiff's rude behavior. Figueroa told plaintiff he had concerns about her interpersonal communication skills and her professionalism. Plaintiff, perceiving the conference to have become a disciplinary hearing, requested union representation. The meeting quickly turned combative, with plaintiff making what Figueroa perceived to be an accusation of racism. After the meeting lasted about an hour, plaintiff said she was too stressed to teach and left the room. She called for a substitute teacher and left school for the day. She proceeded to defendant's administrative offices and met with the school district's Executive Director of Human Resources, Jason Feldman and her union president, Kathy Schwartz. Plaintiff told Schwartz and Feldman about the difficulties she was having with Principal Figueroa. At this time, she told Feldman and Schwartz that the problem was a personality conflict rather than race discrimination. Later that day, she told Schwartz she was being discriminated against because of her race.

Plaintiff called in sick on January 13, 2010, the day she was scheduled for her formal observation. Figueroa prepared plaintiff's evaluation in absentia. In the evaluation, Figueroa marked plaintiff's performance as unsatisfactory in most aspects. The narrative section of the evaluation stressed plaintiff's poor treatment of and negative attitude toward those with whom she disagreed and called for immediate improvement in her ability to maintain collegial relationship with her colleagues.

Plaintiff received the evaluation on January 15. She telephoned Feldman to complain that she was being discriminated against because other teachers were not evaluated in absentia. She also spoke to Schwartz, saying she wanted to file a grievance against Figueroa. Plaintiff

filed her first discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on January 25, 2010.  Neither Feldman nor plaintiff informed Figueroa about the discrimination charge with the EEOC.

Plaintiff, Figueroa, Schwartz, Feldman, and Joan Guilianelli, a union representative, met on January 30, 2010.  In the meeting, the parties agreed that plaintiff would be evaluated again and could choose to have her union representative present during the pre-evaluation conference.  Figueroa agreed to provide a document defining the areas where he thought plaintiff's performance was deficient and giving suggestions for improvement.  Figueroa provided that document to plaintiff on February 3, 2010.

Also on February 3, 2010, Jennifer Chang, a third grade teacher at North Elementary School, complained to Figueroa about plaintiff's hostility after an encounter Chang had with plaintiff at school.  Figueroa forwarded the email he had received from Chang to plaintiff and encouraged plaintiff to work on her relationships with co-workers.  Plaintiff responded by forwarding the email to Feldman, accusing Figueroa of harassment and asking Feldman to stop Figueroa from sending her correspondence without getting her side of the story.  Figueroa sent plaintiff emails on four other occasions in February through early March containing either complaints about plaintiff from parents or disciplinary reminders from Figueroa himself.  Plaintiff responded to the last of these by threatening to seek a restraining order.

Meanwhile, Figueroa received an email from another teacher on February 12, 2010, reporting that the teacher had witnessed a student being made to stand in Plaintiff's classroom for 45 minutes without a desk.  Figueroa reported the incident to the Department of Children and Family Services without investigation.

Plaintiff's second pre-evaluation conference was scheduled for February 19, 2010. On February 18, plaintiff responded to Figueroa's email confirming the time of the conference by writing that she would only attend if accompanied by Schwartz or Guilianelli. She also wrote that the February 3 letter setting out her teaching deficiencies was insufficient because it did not tell her how she could improve. Plaintiff claimed that because the letter was insufficient, she could not schedule an observation.

On February 19, Plaintiff met with Figueroa, Widger, and the building's union representative for the pre-evaluation conference. After being informed that neither Schwartz nor Guilianelli would be attending, plaintiff refused to participate further and returned to her classroom. Widger went to her classroom and requested she come back to the meeting. Plaintiff refused. The next day, Figueroa sent a letter to plaintiff informing her that he considered her refusal to meet an act of insubordination.

Figueroa observed plaintiff on March 1, 2010. Again, Figueroa gave the plaintiff's performance a negative evaluation. Chief among his complaints was plaintiff's trouble interacting with parents and staff, her acts of insubordination, and her inability to maintain professional relationships with co-workers. Figueroa recommended that defendant school district not re-hire plaintiff for the following year. Defendant terminated plaintiff on April 13, 2010.

Plaintiff filed a discrimination charge with the EEOC on January 25, 2010. She received a right to sue notice on February 24, 2010. She filed a claim of continuing discrimination and retaliation with the EEOC on March 15, 2010, and received the right to sue notice on April 12,

2010. She filed another retaliation claim on May 20, 2010, and received a right to sue notice on

June 21, 2010. This action was timely filed on May 20, 2010.

## DISCUSSION

**A.    Summary Judgment Standard**

A movant is entitled to summary judgment under Rule 56 when the moving papers and

affidavits show there is no genuine issue of material fact and the movant is entitled to judgment

as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986);

<u>Unterreiner v. Volkswagen of Am.</u>, 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has

met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts

showing there is a genuine issue for trial. <u>See</u> Fed. R. Civ. P. 56(e); <u>Becker v. Tenenbaum-Hill</u>

<u>Assoc.</u>, 914 F.2d 107, 110 (7th Cir. 1990).[2] The court considers the record as a whole and draws

all reasonable inferences in the light most favorable to the party opposing the motion. <u>See</u> <u>Fisher</u>

<u>v. Transco Services-Milwaukee Inc.</u>, 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

248 (1986); <u>Stewart v. McGinnis</u>, 5 F.3d 1031, 1033 (7th Cir. 1993). This standard is applied

with added rigor in employment discrimination cases, where issues of intent and credibility often

---

[2]Defendant filed a combined motion to strike portions of both the plaintiff's L.R. 56.1 statement of material facts not in dispute and plaintiff's response to defendant's 56.1 statement of material facts. Defendant argues that portions of plaintiff's statement and response fail to comply with the Local Rules. Because plaintiff's statement of facts and response to defendant's statement of facts fail to raise a genuine issue of material fact, the court need not rule on the merits of defendant's motion to strike. Accordingly, defendant's motion to strike (docket no. 47) is denied as moot.

dominate.  See Sarsha v. Sears. Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993).  The

nonmoving party must, however, do more than simply show that there is some metaphysical

doubt as to the material facts.  Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574,

586 (1986).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's]

position will be insufficient; there must be evidence on which the jury could reasonably find for

the [nonmoving party]."  Anderson, 477 U.S. at 252.

**B.     Race Discrimination**

To state a claim for intentional discrimination under Title VII, a plaintiff has two options:

she may satisfy her burden of proof through the direct method of proof, or she may demonstrate

discriminatory intent indirectly by following the burden-shifting framework.  See Adams v. Wal-

Mart Stores, Inc., 324 F.3d 935, 938 (7th Cir. 2003).  Plaintiff argues that there is evidence to

satisfy the burden of proof using either method.

**1.     Direct Method**

To survive summary judgment under the direct method of proof, a plaintiff needs to

present either direct evidence of discriminatory intent, such as an admission, or enough

circumstantial evidence to create a "convincing mosaic" that allows a rational jury to infer that

discriminatory intent motivated the adverse action.  Silverman v. Bd. of Educ. of City of

Chicago, 637 F.3d 729, 733-34 (7th Cir. 2011).  Circumstantial evidence may include suspicious

timing; ambiguous statements; behavior or comments directed at others in the protected class;

and evidence that similarly situated employees outside the protected class received

systematically better treatment.  See Darchak v. City of Chicago Bd. of Educ., 580 F.3d 622, 631

(7th Cir. 2009).  Whatever circumstantial evidence a plaintiff presents "must point directly to a discriminatory reason for the employer's action."  Adams, 324 F.3d at 939.

Plaintiff argues that she has offered sufficient circumstantial evidence to construct a "convincing mosaic" of intentional race discrimination.  The bulk of plaintiff's circumstantial evidence consists of a recitation of the numerous confrontations she had with Figueroa along with the assertion that the only plausible explanation for their repeated clashes is Figueroa's racial hostility.  This is, however, mere speculation insufficient to allow plaintiff to survive summary judgment.  The escalating confrontations do not point directly to racial discrimination, but rather to a serious personality conflict between plaintiff and Figueroa.  Plaintiff does allege that Figueroa made a racially insensitive comment to plaintiff at their first meeting in August 2009, but this single instance is not sufficient to defeat summary judgment.  See Nichols v. S. Ill. University-Edwardsville, 510 F.3d 722, 781-82 (7th Cir. 2007) (stray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment); see also Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522, __ F.3d __, 2011 WL 4349395, at *6 (7th Cir. Sept. 16, 2011) ("[A]lthough [a single comment] is the strongest piece of evidence [plaintiff] points to . . . , it too is insufficient, considering the evidence demonstrating that it was [plaintiff's] work performance that was causally connected to his termination . . . .").  Without anything pointing directly to race as the reason for Figueroa's actions, plaintiff has not presented sufficient evidence to create a triable issue of fact under the direct method of establishing a discrimination claim.

Plaintiff's failure to produce evidence of racial motivation also undermines her claim that defendant created a racially hostile environment.  Title VII provides redress to employees subject

to a hostile work environment as the result of racial harassment of fellow employees. <u>Vore v. Ind. Bell Tel. Co.</u>, 32 F.3d 1161, 1163 (7th Cir. 1994). The conduct must also be so severe or pervasive as to alter the terms or conditions of the employment relationship. <u>Smith v. Sheahan</u>, 189 F.3d 529, 533 (7th Cir. 1999). Plaintiff has introduced no evidence of severe and pervasive harassment of the type barred by Title VII. <u>Vore</u>, 32 F.3d at 1164 (describing repeated racial slurs as the typical case). And even if Figueroa's evaluations and attempts to correct plaintiff's behavior constituted severe or pervasive harassment, there is no evidence that Figueroa was motivated by race, and his actions are thus not actionable. <u>Id.</u> at 1162 ("If the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated . . . .").

## 2. Indirect Method

Plaintiff also fails to establish a prima facie case of discrimination through indirect evidence as prescribed by the <u>McDonnell Douglas</u> burden-shifting formula. <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). To do so in a race-based discrimination case, a plaintiff must present evidence that: (1) she is a member of a protected class; (2) she reasonably performed her job to her employer's expectations; (3) she was subject to an adverse employment action; and (4) other similarly situated employees outside the protected class were treated more favorably by the defendant. <u>Davis v. Con-Way Transp. Cent. Express, Inc.</u>, 368 F.3d 776, 784 (7th Cir. 2004). If the plaintiff meets this burden, the burden of production shifts to the employer to produce a legitimate non-discriminatory reason for its action. <u>Id.</u> If the employer produces a legitimate non-discriminatory reason, the plaintiff must then prove that the employer's articulated reason is mere pretext for discrimination. <u>Id.</u>

In the instant case, defendant argues that plaintiff has failed to satisfy the second and fourth prongs of the prima facie case. Defendant points to Figueroa's repeated attempts to counsel plaintiff to maintain good relations with her co-workers and plaintiff's refusal to take, or even listen to, his directives as evidence of plaintiff's failure to meet legitimate performance expectations. As to the fourth prong, defendant argues plaintiff has failed to identify employees who were similarly insubordinate or unable to get along with co-workers. The court need not address these arguments, however, because the plaintiff has failed to create a triable issue of fact as to whether the defendant's proffered reasons for the negative evaluations and termination were pretextual.

A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. Sarsha, 3 F.3d 1035, 1039 (7th Cir. 1993). Plaintiff must demonstrate that the explanation is dishonest, rather than merely an error. Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir. 2002) (citing Kulumani v. Blue Cross Blue Shield Ass'n., 224 F.3d 681, 685 (7th Cir. 2000)). "A pretext for discrimination means more than an unusual act; it means something worse than a business error; pretext means deceit used to cover one's tracks." Grube v. Lau Indus., Inc., 257 F.3d 723, 730 (7th Cir. 2001) (internal quotations omitted). Ultimately the question is not whether the employer's decision was correct, but rather whether the employer's explanations for its decision are honest. Dvorak v. Mostardi Platt Assoc., 289 F.3d 479, 487 (7th Cir. 2002).

Defendant claims plaintiff was fired because she was insubordinate and unprofessional in her relationship with co-workers. Insubordination and poor interpersonal relationships are

legitimate reasons for adverse employment actions.  See Everroad v. Scott Truck Sys., Inc., 604

F.3d 471, 478 (7th Cir. 2010); Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir.

1996).  In response, plaintiff again points to the history of troubled interactions between

Figueroa and her, arguing that this alone and contradicts defendant's explanation.  Likewise,

plaintiff argues that the "tone and substance" of the evaluations are evidence of pretext "on their

face."  To the contrary, on their face the evaluations are evidence that plaintiff was perceived by

her exasperated principal as having very poor interpersonal skills and problems getting along

with fellow teachers and administrative staff.  This initial impression is bolstered by the emails

from co-workers complaining about their interactions with plaintiff.  An employee's attempt to

avoid summary judgment cannot succeed unless the employee offers evidence suggesting that

the employer itself did not believe the proffered reasons for termination.  Burks v. Wisc. Dept. of

Transp., 464 F.3d 744, 754-55 (7th Cir. 2006).  Plaintiff has not introduced evidence from which

the court could infer that Figueroa lied about his reasons for the poor reviews that led to her

termination.  The series of troubled encounters between the two weakens rather than strengthens

plaintiff's case, because it was plaintiff's inability to get along with her co-workers, including

Figueroa, that defendant claims led to Figueroa's negative evaluations and plaintiff's

termination.

## C.    Retaliation

Title VII's anti-retaliation provision makes it unlawful for an employer to "discriminate

against" an employee "because he has opposed any practice made an unlawful employment

practice" by the statute or "because he has made a charge, testified, assisted, or participated in [a

relevant] investigation, proceeding, or hearing."  42 U.S.C. § 2000e-3(a).  As with a

discrimination claim, a plaintiff may establish a prima facie case of retaliation directly or indirectly. Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 644 (7th Cir. 2002). Under the direct method, a plaintiff must offer evidence that she: (1) engaged in a statutorily protected activity; (2) was subjected to an adverse employment action; and (3) a causal connection exists between the two events. Treadwell v. Office of Ill. Sec'y of State, 455 F.3d 778, 781 (7th Cir. 2006). Under the indirect method, a plaintiff must show that: (1) she engaged in protected activity; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other similarly-situated employees who did not engage in protected activity were treated more favorably. See Mattson v. Caterpillar, Inc., 359 F.3d 885, 888 (7th Cir. 2004).

Successfully establishing a prima facie case creates a rebuttable presumption of retaliation, and shifts the burden of proof to the defendant to articulate a legitimate, nonretaliatory reason for the adverse actions. Knox v. Indiana, 93 F.3d 1327, 1334 (7th Cir. 1996). If the defendant is able to provide such a reason, the presumption of retaliation dissolves. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511-20 (1993). If an employer offers a legitimate, non-discriminatory reason for its adverse employment actions, the burden shifts back to the plaintiff to present evidence that the employer's non-discriminatory reason is pretextual. Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 394 (7th Cir. 1998)

Plaintiff again argues that she has made the prima facie case under both methods. Plaintiff presented evidence that she engaged in statutorily protected activity by filing discrimination charges with the EEOC and complaining about discrimination to members of defendant's administration. Casna v. City of Loves Park, 574 F.3d 420, 427 (7th Cir. 2009)

(informal complaints constitute protected activity).  Plaintiff suffered an adverse employment action when defendant terminated her employment.  Figueroa's negative evaluations are not themselves adverse employment actions.  Beamon v. Marshall & Ilsley Trust Co., 411 F.3d 854, 862 (7th Cir. 2005).

The impediments to plaintiff' retaliation claim under the indirect method are the same as they were for the discrimination claim.  Defendant's argument that plaintiff has not shown that she was meeting defendant's legitimate expectations and has not presented evidence of similarly situated employees is persuasive.  As for the direct method, plaintiff cannot point to a causal connection between the EEOC charges and her termination.  Figueroa, the individual responsible for her termination, did not know about these complaints.  If the decision-maker is unaware of the protected activity, there can be no causal link between the activity and the adverse decision.  Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004).

The parties disagree over whether Figueroa knew about plaintiff's informal complaints of discrimination.  Plaintiff contends that she complained of race discrimination in the January 30 meeting with Figueroa.  Defendant argues that plaintiff's deposition testimony establishes that at the January 30 meeting, plaintiff complained of being treated unfairly in general but did not mention race discrimination.  Another possibility is the January 11 pre-evaluation conference.  Plaintiff said something at that meeting that Figueroa took to be an accusation of racism and a threat to sue.  If this was a complaint about racial discrimination, it would be an instance of protected activity known by Figueroa.

Nevertheless, even if plaintiff has established a prima facie case for retaliation, she has not come forward with evidence that defendant is lying about terminating her for her inability to

get along with her co-workers. The evidence for pretext is plaintiff's previous positive evaluations and test scores as well as the supposed implausibility of Figueroa's evaluations and his negative reactions to plaintiff's behavior. The evidence on record, however, is consistent with defendant's stated reasons for termination. Plaintiff, in the eyes of Figueroa, had a serious problem relating to co-workers in a professional manner and was insubordinate. She acknowledges that she refused to attend the January 19 pre-evaluation conference and would not answer Figueroa's emails. Moreover, Figueroa's evaluations, the correspondence between Figueroa and plaintiff, and the complaints from other teachers all establish that plaintiff's rocky relationship with her co-workers was the central issue for Figueroa. Figueroa expressed his concern with plaintiff's behavior towards co-workers in the letter he gave plaintiff in October, well before plaintiff took any protected action. This consistency undercuts any inference of pretext. See Argyropoulos v. Alton, 539 F.3d 724, 734 (7th Cir. 2008).

The positive evaluations from other schools and the test scores do not discredit defendant's proffered reasons for plaintiff's termination. Figueroa did evaluate plaintiff's classroom abilities as being significantly worse than plaintiff's previous evaluators did, but plaintiff admitted that Figueroa boasted of his reputation as a hyper-critical evaluator. Given Figueroa's attitude toward evaluation, it should not be surprising that plaintiff received worse evaluations from him that she had from other evaluators at other schools. Moreover, even if he was too critical of plaintiff's teaching ability, Figueroa was not primarily concerned about plaintiff's ability to teach while alone in the classroom. Figueroa's evaluations repeatedly stress that the one area of plaintiff's performance that needed immediate, critical attention was her relationships with teachers and staff members. Her previous positive evaluations for teaching

are not enough to raise an inference that Figueroa was lying about his concerns with her insubordination and ability to interact with others.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted, and defendant's motion to strike is denied as moot.


**ENTER:** **September 22, 2011**

_____
**Robert W. Gettleman**
**United States District Judge**